Good morning. May it please the court, counsel. I believe this will be mercifully brief. The issues are not great as far as the issues go in this case. I was appointed as the third attorney to represent Mr. Shareef, so some of the information may have escaped during the course of the first two counsel who were appointed to represent him, but there are some issues that I will address briefly. Number one, and this would be the issue regarding the 1999 Canada determination about the telemarketing lottery tickets and what had happened with those tickets. In 1999, there was no law in Canada making it illegal for an individual to participate in lotteries. That didn't happen until the end of sometime mid-1999. So where we're going with this is that there should be a 10-level increase applied to Mr. Shareef instead of a 14-level increase under Section 2F 1.1b1k. It is a list of... Are you talking about the loss calculation? The loss calculation, yes. I'm sorry. I believe that the level should be a 32 and not a 36. Didn't he stipulate to $1.8 million in loss? There was $1.8 million, yes. But what happened was there was a calculation that came up saying that there was more than $5 million in loss. And that under the guidelines for the year 2000, which is the one that applied here, would cause a range that should have been 121 to 151 months and not the 171 months which was applied to Mr. Shareef based on a first conviction. He had no prior convictions other than this particular one. And that would be our major issue that we would address, that there was an error in applying that particular consideration of what had happened earlier in Canada when, in fact, what had occurred was the court in the State of Washington had already had a hearing involving my client, but not in a criminal case, but rather in a civil case. And there was a civil compromise that was rendered between Shareef and a few other people who were involved in a lottery with him, and that was settled. That shouldn't have been applied in this particular case. So that was something that caused him to go from the 121 to 151 range to the 171 range. And aren't you confusing the number that you used for the loss and restitution? The number? Because the loss was 1.8. And that's he stipulated to that. And that's what the court used. But then you wanted reductions in the loss because of money that had been collected. But how much restitution he has to pay is a different story than what the actual loss was. I mean, the court bought the argument at sentencing that originally the probation officer wanted another 5 million, right? That's correct. And the court said, no, no, no, no, no, we're not going to do that. Well, I'll go with the 1.8. And it seems to me that the record showed that counsel for Mr. Shareef and counsel for the government both said, okay, 1.8, that's what the court used. And what you're trying to do is amounts that's recovered to bring the actual loss down. And that seems to me that that has to do with restitution, not what the loss was. Well, the number that you come, that the court came up with was a level 14, which was more than 5 million dollars. And so that's greatly exceeding whether it's 1.8 million. That's a couple of ranges too high for my client to receive this, particularly given the fact this was a first time conviction. He had no priors in advance of this particular case. The other issue I would like to address is the credit for the two years in British custody. He was in custody in England for two years, during which time he had two other attorneys who were working on the case. Ultimately, he came to the United States with the thought in mind that he was going to be sentenced to custody, but that he would get a two-year break from the standpoint that he had already served that time in Great Britain. Now, the government has objected to that, saying that he was … Well, was it the time he was in custody in Great Britain for this offense or for other offenses? Well, I think it would be possibly this offense, but it's hard to tell. He was in custody. He was directed to return to the United States. He came to Los Angeles, was brought to Los Angeles on this particular case. So I have to believe that was the reason. Although, as I said, I was not initially on this case, so I'm not sure what some of the other people might have said prior to my appointment on the case. Didn't the government file … It seems that United States v. Peters stands for the proposition that the district court lacked authority to grant credit for time served. Then the government now has filed documents for judicial notice from the Bureau of Prisons reflecting the time served credit given to Mr. Sharif, and that wasn't opposed by you, and it seems he's gotten full credit for his prior incarceration at this point. It appears that he now has received that credits for … And what's the … I'm not sure that he got credits for this particular time, because I think the range is off, but I could be wrong about that. It's been difficult to parse through some of the things that … All right. Thank you. Thank you. You only need … Come forward with a question. You only need to respond to what you think needs response. Can I say my name? Yes, you may, but I was just telling you. Whatever your name is, I'm just telling you that you only need to respond to whatever you think needs a response. Well, let's see. I was going to get into battle with Mr. Mayock about who could be more brief. Oh, good. I hope you win. My name is Ellen Lindsay. I'm an assistant United States attorney in Los Angeles, and I will just clear up that the court, in fact, added 12 levels for the loss of 1.8 and then varied upward from the guideline range, and that the way the rule works, I do a lot of cross-border cases, and the rule works is if you're in custody in the foreign country solely on the U.S. charges, you get credit. That was the case here. He got credit just for, you know what, and giggles. I looked up on the BOP website last night. He still got the credit 722 days. So if Your Honors have any questions about the e-mail and the promise or not of the government. The counsel didn't raise that in his argument. Okay. Can the BOP retract that credit? I do not believe that they can unless they were to learn for some reason that he was in custody for another reason. Like what happened was he got arrested in the U.K. because he was taking somebody's driver's test for them, and they did a fingerprint check, and lo and behold, he's got this warrant. And I think that was, you know, a day or two in custody, but the rest of it he's already got credit for. Now, wouldn't there be challenges that he could make internally if they take your credit away? Yes, absolutely. And then if you exhausted those, you might have some sort of confinement issues. Possibly, yes. Yes. I think they could take away his good time credit. The calculation that I presented to Your Honors includes his good time credit. That part could be taken away if he's disciplined, but you can't take away the time he's already served. He does get credit for that because the Bureau of Prisons determined that that's why he was in custody. And with that, I leave you. Thank you. Thank you. The next case on the calendar is United States v. Zuniga-Garcia. The case is submitted.
judges: Reinhardt, Wardlaw, Callahan